KYLE SCHUMACHER (BAR #121887)
kyle@schumacherlane.com
**SCHUMACHER LANE PLLC**
P.O. Box 558
Spring Branch, TX 78070
503-482-8137 ph
210-783-1383 fax

Attorneys for Plaintiff
Daniel Anderson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS – SAN ANTONIO DIVISION

| | |
|---|---|
| Daniel Anderson, <br><br> Plaintiff, <br><br> v. <br><br> Goldman Sachs Bank USA; and DOES 1 through 100 inclusive, <br><br> Defendants. | CASE NO. 5:23-cv-00237 |

COMES NOW Plaintiff **DANIEL ANDERSON** ("Plaintiff"), an individual, based on information and belief, to allege as follows:

## INTRODUCTION

1. This case arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their unlawful and unauthorized access to Plaintiff's credit report.

2. Defendant Goldman Sachs Bank USA ("Goldman Sachs") accessed Plaintiff's TransUnion credit report as well as his personal and confidential information without a permissible purpose. Goldman Sachs obtained Plaintiff's TransUnion credit report for a purpose that was not authorized by the FCRA.

3. The United States Congress passed the FCRA to ensure fair and accurate credit reporting, promote efficiency in banking, and to protect consumers' privacy. Violations of the FCRA impair the efficiency of the banking system and expose consumers to grave privacy risks;

both of which undermine the public confidence that is essential to the continued functioning of the lending industry and credit reporting system.

4. The FCRA prohibits users of a consumer's credit report from obtaining the report unless the user has a permissible purpose for procuring the report as defined in the statute. However, creditors intentionally and routinely ignore FCRA requirements for legally accessing a consumer's credit report.

5. Creditors accessing a consumer's credit reports outside of these limited purposes was not the intent of Congress when it enacted the Fair Credit Reporting Act.

## JURISDICTION & VENUE

6. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

7. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, 1367, and 15 U.S.C. § 1681.

8. This venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

9. Plaintiff alleges that, for purposes of establishing residency under 28 U.S.C. § 1391(b)(1), each of the named Defendants conducts sufficient business within the forum state and this Court has personal jurisdiction over each Defendant under 28 U.S.C. §§ 1391(c)(2) and 1391(d).

## GENERAL ALLEGATIONS

10. Plaintiff alleges that he previously had an account with Goldman Sachs, and that the account was included in his no asset Chapter 7 bankruptcy filing as it occurred pre-petition and was subsequently discharged.

11. Plaintiff alleges that the Goldman Sachs account is closed since it was discharged on July 6, 2022.

12. Plaintiff alleges that Goldman Sachs pulled his TransUnion credit report on August 4, 2022 (the "Impermissible Pull").

13. Plaintiff alleges that at the time of the Impermissible Pull, he had no personal or business relationship, nor had he inquired about a personal or business relationship, with Goldman Sachs.

14. Plaintiff alleges that he never conducted any business with or incurred any financial obligations to Goldman Sachs after his bankruptcy discharge.

15. By accessing Plaintiff's credit report, Goldman Sachs obtained personal and confidential information about him, including his current and past addresses, birthdate, employment history, and telephone numbers. In addition, unknown employees, representatives, marketing and business affiliates, and/or agents of Goldman Sachs also have viewed or have access to this sensitive, private information.

16. Plaintiff alleges Goldman Sachs knew or should have known it had no permissible purpose to access his TransUnion credit report and private information.

17. Plaintiff alleges the Impermissible Pull was made without his knowledge or consent and violated his privacy.

18. Plaintiff alleges that each and every Defendant is familiar with the FCRA requirements and subscribes thereto.

19. Plaintiff alleges that all of Defendants' actions alleged herein were committed knowingly, intentionally, and in reckless disregard of the unambiguous meaning of the FCRA, regulatory guidelines on proper credit report authorization, and credit reporting industry standards to purposefully undermine Plaintiff's ability to control access to his private information.

20. In the alternative, Plaintiff alleges that each and every Defendants' actions were the result of negligent policies, procedures, and an objectively unreasonable interpretation of the FCRA, all which inevitably led to the Impermissible Pull.

## FACTUAL BACKGROUND

21. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A. Credit Inquiries**

22. Once a relationship between a consumer and creditor exists, and limited to the period where that relationship continues, the creditor may be allowed access that consumer's report, which is considered an "Account Review Inquiry", by contacting one or more credit bureaus to review a consumer's FICO scores and other personal information.

23. These inquiries will remain on the credit report for two (2) years from the date of the inquiry.

24. TransUnion defines these Account Review Inquires on the face of its credit reports as follows, "The listing of a company's inquiry in this section means that they obtained information

from your credit file in connection with an account review or other business transaction with you."

25. Equifax includes a description of various inquiries on the face of its credit report which states, "These are inquiries, for example, … [include] periodic account reviews by an *existing* creditor…" (emphasis added).

26. Similarly, Experian's description of various inquires on the face of its credit report states, "Soft inquiries are generally initiated by others, … [including] lenders periodically reviewing your *existing* credit accounts." (emphasis added).

27. Courts have discussed this as well by stating, "[t]he FCRA is clear that account review inquiries are permissible to determine whether the consumer continues to meet the terms of the account. 15 U.S.C. § 1681b(a)(3). The operative word in this provision is "continues," which indicates Congress recognized that once an individual terminated their relationship with a lender it was no longer permissible for the lender to access the account—precisely because the lender would have no reason for doing so." *In re Ocwen Loan Servicing LLC*, Case No. 3:16-cv-00200-MMD-WGC, 2017 WL 1289826, at *5 (D. Nev. Mar. 3, 2017) (rev'd on other grounds).

28. A bankruptcy discharge of an account terminates the relationship between the consumer and the creditor and the creditor's right to access, review, or otherwise inquire about a consumer's credit file. *See id.*

29. Credit reports contain private and sensitive information about a given consumer. As such, the FCRA details the limited permissible purposes under which a person may access a consumer's reports as well as requiring the credit reporting agencies maintain procedures to identify the inquiring party, certify the purpose of the inquiring party, and certify that the information will be used for no other purpose.

30. Unauthorized inquiries create an increased risk of privacy harm and identity theft. Congress specifically recognized the "elaborate mechanism developed for investigating and evaluating credit worthiness, credit standing, credit capacity, character, and general reputation of consumers" and the "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *Nayab v. Capital One Bank (USA), NA*, 942 F. 3d 480, 492 (9th Cir. 2019).

**B.   Plaintiff Filed Bankruptcy and Received a Discharge**

31. Plaintiff filed a voluntary petition for Chapter 7 bankruptcy on March 21, 2022 in order to repair his creditworthiness and discharge certain debts.

32. Plaintiff listed Goldman Sachs in his bankruptcy Schedules E/F as holding a nonpriority unsecured claim.

33. Plaintiff's discharge was a no asset discharge which legally discharged all unsecured debts.

34. Plaintiff's bankruptcy was discharged on July 6, 2022.

35. Goldman Sachs received notice of the bankruptcy discharge from the bankruptcy court via electronic transmission on July 6, 2022.

36. Plaintiff alleges Goldman Sachs had actual knowledge of his bankruptcy discharge.

**C.  Unauthorized Inquiry – Goldman Sachs**

37. Plaintiff alleges after his prior account relationship with Goldman Sachs was terminated on July 6, 2022, he never applied for or inquired about a loan or credit transaction from Goldman Sachs, nor did he inquire about employment or insurance from Goldman Sachs.

38. Plaintiff alleges he never authorized Goldman Sachs to access his credit report, personal, or sensitive information which led to the Impermissible Pull.

39. Plaintiff alleges Goldman Sachs did not have a permissible purpose as detailed in the FCRA for accessing Plaintiff's TransUnion credit report on the date of the Impermissible Pull.

40. Plaintiff alleges Goldman Sachs knew or should have known it had no permissible purpose to access his TransUnion credit report and private information.

41. However, without any permissible purpose, Goldman Sachs impermissibly accessed Plaintiff's TransUnion credit report, invading his privacy and confidential information as well as increasing his risk for identity theft, fraud, and other privacy harm.

**D.  Damages**

42. Plaintiff pulled the credit report at issue at a cost for access to the report specifically for the sole purpose of verifying who was accessing his credit report and personal data.

43. As a result of the Impermissible Pull, Plaintiff has incurred out-of-pocket expenses, and has also suffered emotional harm, physical sickness, and excessive stress resulting in doubt as to the effectiveness of the Bankruptcy Code, the Fair Credit Reporting Act, and the power of this Court to preserve his rights to determine who can and cannot access his private and sensitive information.

44. Due to Goldman Sachs' impermissible access to Plaintiff's TransUnion credit report, Plaintiff has suffered an invasion of his privacy and confidential information. In addition, the Impermissible Pull has subjected Plaintiff to an increased risk of identity theft, fraud, and other privacy harm, resulting in consequential anxiety and emotional distress.

45. Goldman Sachs' actions, as alleged herein, are in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681b.

**FIRST CAUSE OF ACTION**

**(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681b)**

**(Against Defendants and Does 1-100)**

46. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.   Goldman Sachs Violated Plaintiff's Privacy by Accessing His Credit Report Without Authorization**

47. Since July 6, 2022, Plaintiff never conducted any business or incurred any financial obligations with Goldman Sachs.

48. Plaintiff's prior authorization, if any, given to Goldman Sachs on a prior account, does not continue in perpetuity. *Smith v. One Nev. Credit Union*, Case No.: 2:16-cv-02156-GMN-NJK, 4 (D. Nev. Jun. 27, 2017) ("This argument rings hollow. The idea that a single authorization to obtain credit reporting information for a once existing account would authorize an institution to continue to obtain such information pertaining to a terminated account into perpetuity strains credulity."). Thus, Goldman Sachs has no authorization on which it can rely.

49. By accessing Plaintiff's credit report, Goldman Sachs obtained personal and private information about him, including his current and past addresses, birthdate, employment history, and telephone numbers.

50. By accessing Plaintiff's credit report, Goldman Sachs obtained information relative to Plaintiff's personal and individual credit accounts, payment history on those accounts, credit history, and credit worthiness.

51. By accessing Plaintiff's credit report, Plaintiff's private financial information was published to Defendant. In addition, unknown employees, representatives, marketing and business affiliates, and/or agents of Goldman Sachs also have viewed or have access to this sensitive, private

information.

52. Defendant's access to Plaintiff's credit report will continue to be displayed on his credit report for two (2) years from the date of the Impermissible Pull.

53. Goldman Sachs' access to Plaintiff's credit report information, without Plaintiff's consent, falls outside of the scope of any permissible use or access included in 15 U.S.C. § 1681b.

54. Goldman Sachs violated 15 U.S.C. § 1681b(f) by obtaining Plaintiff's credit report without authorization and without a certified purpose in accordance with § 1681e.

55. In the alternative, Plaintiff alleges Goldman Sachs certified the purpose was for "account review", which is a violation of 15 U.S.C. § 1681q as it was made under false pretenses since there was no valid account to be reviewed. Therefore, the violation of 1681q provides an additional basis for Goldman Sachs' liability under 1681n and 1681o.

56. Goldman Sachs' Impermissible Pull is a violation of the FCRA.

**B.   Willful Violations**

57. Plaintiff alleges that Goldman Sachs' conduct resulted from an objectively unreasonable interpretation of the FCRA requirements detailing a permissible purpose for accessing a consumer's credit file.

58. As the FCRA does not allow a creditor to access a consumer's credit file once the account relationship has terminated, Goldman Sachs' violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

59. Goldman Sachs was notified by the bankruptcy court multiple times, including notice of the bankruptcy discharge. As Goldman Sachs had actual knowledge the business relationship had been terminated, the Impermissible Pull was intentional and is a willful violation of Plaintiff's privacy.

60. In the alternative, Goldman Sachs was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

61. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from Goldman Sachs in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**PRAYER FOR RELIEF**

62. WHEREFORE, Plaintiff prays for judgment as follows:

a. For preliminary and permanent injunctive relief to stop Defendant from

engaging in the conduct described above;

b. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;

c. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;

d. Award attorneys' fees and costs of suit incurred herein pursuant to 15 U.S.C. §§ 1681n and 1681o;

e. For determination by the Court that Defendant's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, *et seq.*; and

f. For determination by the Court that Defendant's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Respectfully submitted,

**SCHUMACHER LANE PLLC**

Dated: February 27, 2023

*/s/ Kyle Schumacher*
Kyle Schumacher
Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial of this matter by jury.

**SCHUMACHER LANE PLLC**

Dated: February 27, 2023

*/s/ Kyle Schumacher*
Kyle Schumacher
Attorneys for Plaintiff